UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MAXINE R. RIVENES,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security Administration,<br><br>Defendant. | CASE NO. **C08-5208FDB**<br><br>REPORT AND RECOMMENDATION<br><br>Noted for January 23, 2009 |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court reverse the decision and remand the matter to the administrative decision for an award of appropriate benefits..

INTRODUCTION

Plaintiff, Maxine Rivenes, was born in 1955. She graduated from high school and has past relevant work as a teacher's assistant, cook, and child care worker (Tr. 97, 139, 731). On March 31, 1994, while working for Columbia College Head Start, Plaintiff slipped and fell, injuring her head, neck and back. Tr. 193. The injury led to a lower back surgery in 1996, which improved her pain, but did not completely alleviate her discomfort. Tr. 335.

On August 24, 2000, Plaintiff's treating physician, Dr. Randall, wrote a letter of referral to Dr.

Pence, in which he concisely summarized Plaintiff's medical history:

> I would like to introduce you to Maxine Rivenes. Maxine is a patient of mine who has proteinuria, nephrotic range. She has been evaluated by a nephrologist in the past. Most recently she was seen by Dr. John Rastall at the Vancouver Clinic in February of 1999. Enclosed you should have a copy of his note. At that time he recommended that she be on Monopril to help control her blood pressure and proteinuria. At that time she had been on verapamil and Dr. Rastall recommended change to deltiazam. Most recently, we did a follow up 24-hour protein on Maxine and we found that she probably needs a recheck.
>
> Maxine at this point time, would rather not travel to Vancouver any more if possible. Past medical history is significant in that she may have had protein in her urine since the time of delivering her children. She has a history of hypertension, has a history of tobacco smoking which she stopped in 08/98. She also has a history of severe anxiety disorder with panic attacks and agoraphobia. She essentially is confined to her house as family members can transport her themselves. She makes only limited trips outside the house secondary to the above problem. She has a history of Xanax addiction which she has struggled significantly with over the years. She also has a history of a C5-6 laminectomy. She also has hyperlipidemia.
>
> Much of Maxine's care has been complicated by her anxiety disorder and difficulty with changes in her life, even changes of medication can provoke significant resistance and distress. Currently her medications are Paxil 20 mg one half tab p.o. q.d., Xanax 0.25 mg 32 tablets every 30 days on contract with myself, refilled only by myself. She is also on Monopril 20 mg p.o. q.d. Until recently she was on Lipitor 80 mg p.o. q.d. for her hyperlipidemia, however, unknown to myself, she stopped this back in April because she felt somewhat achy. She also has taken Prilosec in the past for gastritis and gastroesophageal symptoms and at her last visit ended up started her on Lopid, 600 mg p.o. b.i.d. as her hyperlipidemia had significantly worsened and triglycerides had increased to approximately 1127 since the cessation of her Lipitor.
>
> I will send you Dr. Rastell's note and labs from this spring as well as the labs from last fall. Please note that at her last office visit, July 31, 2000, blood pressure was 132/84 and her weight was 110 kg.

Tr. 561-62.

On November 28, 2000, Plaintiff filed an application for Supplemental Security Income benefits. (Tr. 19, 440). This application was denied initially and upon reconsideration, after which Plaintiff requested a hearing before an Administrative Law Judge, (hereinafter, ALJ) of the Social Security Administration. On October 29, 2004, after a hearing the ALJ issued a decision finding Plaintiff not disabled. (Tr. 16-29). Plaintiff timely requested Appeals Council Review of the ALJ's decision, but by letter dated September 20, 2005, the Appeals Council declined to grant the request for review. (Tr. 11-15). This action resulted in the ALJ's 10/29/04 decision becoming the final order of the agency. Plaintiff timely requested appeal to the United States District Court, (Cause No: 05-5749-RBL), and by Order dated 6/23/06, this matter was reversed and remanded for further proceedings. (Tr. 747-748, 749-753).

After another hearing, the ALJ issued a second decision finding Plaintiff not disabled. (Tr. 716-732). Plaintiff timely requested appeal to this Court.

It appears Plaintiff has not worked full-time since her accident in 1994. Plaintiff alleges disability based on a combination of impairments, including the following: severe panic attacks that occur roughly 3-4 times per week and last 30-45 minutes at a time; depression with associated withdrawal from people and places; diminished concentration and focus because of depression and panic attacks; headaches immediately following the anxiety attacks; fearful of heights causing her to have anxiety, become shaky, weak, and near fainting; low back pain and left buttock pain causing the inability to remain seated or standing for extended periods of time; because of low back and buttock pain, she needs to lay down periodically; status post cervical surgery; status post low back surgery; arthritis of the neck and knee areas with pain and stiffness; chronic leg pain; and chronic fatigue. (Tr. 671-683, 691-701, 870-878).

Plaintiff's Complaint was filed with the Court on April 4, 2008. Plaintiff alleges the following errors: (1)The ALJ Erred in Determining the Plaintiff's Residual Functional Capacity and Improperly Rejected the Opinions of the DDS Physicians; and (2) The ALJ Failed to Pose Complete and Proper Hypotheticals. Defendant counter-argues that the ALJ applied the proper legal standards and that the administrative findings and conclusions are properly supported by substantial evidence.

## DISCUSSION

This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

*A.  THE ALJ FAILED TO PROPERLY CONSIDERED THE MEDICAL EVIDENCE AND FORMULATED A RESIDUAL FUNCTIONAL CAPACITY UNSUPPORTED BY THE MEDICAL EVIDENCE*

The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). He may not, however, substitute his own opinion for that of qualified medical experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996). In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

"[R]esidual functional capacity" is "the maximum degree to which the individual retains the capacity for sustained performance of the physical- mental requirements of jobs." 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c) (emphasis added). In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a). The regulations further specify: "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." Id. at § 404.1545(b).

Here, Plaintiff argues the ALJ omitted limitations from her RFC due to his erroneous and unsupported consideration of Dr. Zoran Brkanac's opinion. Specifically, Plaintiff contends the ALJ stated he was giving Dr. Brkanac's opinion some weight but adopted only parts of Dr. Brkanac's determination and failed to incorporate the limitations set forth by Dr. Brkanac without adequate explanation. (Tr. 526-529, 728). The undersigned agrees.

Dr. Brkanac performed a comprehensive mental evaluation of Ms. Rivenes on April 28, 2001. (Tr. 529-529). Dr. Brkanac diagnosed Ms. Rivenes as having major depressive disorder, anxiety disorder, and panic disorder, (anxiety with panic attacks being conditions found by the ALJ to be severe impairments). (Tr. 528, 721). Because of these conditions, Dr. Brkanac determined that Plaintiff was

moderately limited in her ability to maintain regular attendance, complete a normal workday without psychiatric interference, and tolerate the stress in a competitive work environment. (Tr. 529). He also provided this medical source statement:

> There is no impairment in her ability to perform simple and repetitive tasks or detailed and complex tasks. There is mild to moderate impairment in her ability to accept instructions from supervisors, interact with coworkers and the public, and perform work consistently. Special supervision is not needed. There is moderate impairment in her ability to maintain regular attendance, complete a normal workday without psychiatric interference, and tolerate the stress in a competitive work environment.

(Tr. 529).

Drs. Lysak and Clifford, State agency psychological consultants, completed a Psychiatric Review Technique Form (PRTF) (Tr. 490-503) and Mental RFC Assessment form (Tr. 504-06). They similarly assessed several moderate limitations, including Plaintiff's ability to maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms; and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 502, 504-05).

In his RFC, the ALJ only found Plaintiff's mental limits to be: simple work; no public interaction; and occasional coworker and supervisor contact. (Tr. 723). These limitations are not accurately reflected in the above medical opinions. The record is void of any other mental evaluation or assessments of Plaintiff. Thus, the ALJ did not rely on any other medical opinion evidence when he rejected the opinions of Dr. Brkanac, Dr. Lysak, and Dr. Clifford, and basically formulated his own mental limitations without any medical basis.

The ALJ does not provide any legitimate reason to reject the medical opinion evidence in the manner that he did. The ALJ relied on reported activity level and treatment records to support his rejection of the mental evaluations performed and limitations assessed by professional medical providers. For instance, the ALJ noted Plaintiff's symptoms were better when she took prescribed medication compared to when she did not (Tr. 533, 538, 542, 554, 726). The ALJ was aware of Plaintiff's significant daily activities as described in her treatment records (Tr. 726), including babysitting her granddaughter (Tr. 606, 802), going to her granddaughter's soccer games (Tr. 605, 808), walking for exercise (Tr. 597, 600, 836), handling her mother's estate (Tr. 836), going to the beach and planning a trip to Reno (Tr. 832), going clam digging (Tr. 813, 819), going to a wedding reception (Tr. 811) and a car show

REPORT AND RECOMMENDATION
Page - 5

(Tr. 812), and traveling to Reno (Tr. 808).

However, the record does not support the ALJ and the ALJ's reliance on these activities is unreasonable. The ALJ and Defendant omit the testimony of Plaintiff that accompanied these activities. For example, Plaintiff explained that she babysat her granddaughter only with the help of her daughter. She could only attend a portion of her grandchildren's sporting events before she became to anxious or depleted and had to return to her home. She went to a car show and flew on a plane only when she was heavily sedated. In sum, the ALJ failed to provide any legitimate reasons for rejecting all the limitations provided by the medical professionals who evaluated Plaintiff's mental health.

Because (1) the ALJ failed to provide legitimate reasons to reject the medical opinion evidence, (2) the record is fully developed and there are no other outstanding issues to be resolve, and (3) the vocational expert testimony clearly indicates that if the limitations as posited by the mental health experts is included in the hypothetical, Plaintiff would not be able to sustain any employment, the court should credit those opinion. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.2000)(*quoting* Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir.1996). Also, significant is the fact that the matter has previously been remanded and the same errors were made.

## CONCLUSION

Based on the foregoing discussion, the Court should reverse and remand the matter to the Administration for a determination of the accurate date of onset and an award of appropriate benefits. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **January 23, 2009**, as noted in the caption.

DATED this 5th day of January, 2008.

                                               */s/ J. Kelley Arnold*
                                               J. Kelley Arnold
                                               U.S. Magistrate Judge